Yossef KAHLON a/k/a Jossef Kahlon and Atlas Solar Holdings LLC, Plaintiffs,

v.

Erica T. YITZHAK, the Law Offices of Erica T. Yitzhak, and Erica T. Yitzhak Esq. P.C., Defendants.

Erica T. Yitzhak, the Law Offices of Erica T. Yitzhak, and Erica T. Yitzhak Esq. P.C., Third Party Plaintiffs,

v.

Troy Lambe and Sunray Solar Inc., Third Party Defendants.

16–CV–3364

United States District Court, E.D. New York.

Signed 9/5/2017

LAW OFFICE OF ELIAS C. SCHWARTZ, PLLC, By: Jennifer J. Bock, Esq. and Keri Ann Joeckel, Esq., 343 Great Neck Road, Great Neck, New York 11021, Attorneys for Plaintiffs

VERNER SIMON, By: Paul W. Verner, Esq., 30 Wall Street, 8th Floor, New York, New York 10005, Attorney for Defendants/Third Party Plaintiffs & Third Party Defendants

## MEMORANDUM & ORDER

WEXLER, District Judge:

Plaintiffs Yossef Kahlon ("Kahlon") and Atlas Solar Holdings LLC ("Atlas") (collectively "plaintiffs" or "Kahlon/Atlas") commenced a legal malpractice action in New York Supreme Court, Nassau County, against defendants Erika T. Yitzhak and her firms, the Law Offices of Erica T. Yitzhak, and Erika T. Yitzhak, Esq., P.C. (collectively "Yitzhak"). Yitzhak filed a third-party action against Troy Lambe and Sunray Solar Inc. (collectively, "third-party defendants" or "Lambe/Sunray"). Defendants Yitzhak and/or third-party defendants Lambe/Sunray (collectively, the "removing parties") jointly removed the action to this Court. Plaintiffs have moved to remand the matter to state court and for attorneys' fees. Motion, Docket Entry ("DE") [12]. For the reasons set forth below, the motion is granted and the case remanded.

## I. BACKGROUND

### A. General Litigation History

This case is one of several involving the same parties. Familiarity with the general factual history is assumed and the background set forth here is limited matters pertaining to this litigation. The cases arise from the collapse of a business relationship between plaintiffs Kahlon/Atlas and third-party defendants Lambe/Sunray. As that relationship deteriorated, plaintiffs retained Yitzhak to pursue claims against Lambe/Sunray. Plaintiffs and Yitzhak are all residents of New York, while third-party defendants Lambe/Sunray are New Jersey residents.

Plaintiffs claim that Yitzhak took various actions "at their own behest" including filing UCC liens against Lambe/Sunray, and writing potential investors in Lambe/Sunray to advise them of the pending litigation. On or about October 22, 2012, Yitzhak filed and served a summons with notice on behalf of Atlas against Lambe/Sunray in New York Supreme Court, Nassau County. According to plaintiffs, Yitzhak made numerous errors in that litigation which ultimately resulted in its dismissal for lack of personal jurisdiction.

On or about May 24, 2013, Lambe/Sunray filed an action in the Eastern District of New York against Kahlon/Atlas and Yitzhak. See 13–cv–3126 (the "federal case"). During the trial, Lambe/Sunray and Yitzhak agreed to a settlement pursuant to which Lambe/Sunray agreed to release its claims against Yitzhak in exchange for the Yitzhak's payment of the remaining policy limits on her professional liability policy, up to $650,000. Furthermore, Yitzhak accepted a "hold harmless" from Lambe/Sunray providing that, *inter alia*, in the event Yitzhak were to be sued by her former client, Kahlon/Atlas, her defense would be assumed by Lambe/Sunray and specifically by their counsel, Paul Verner. At the parties' request, the settlement was placed on the record. See Trial Transcript of 1/29/16 ("Tr."), 13–cv–3126, DE [155–5]. At Mr. Verner's request, the Court asked the parties if they agreed with their attorneys' representations about the settlement terms, which they did. Tr. 908–09. The parties did not ask the Court to retain jurisdiction over the settlement agreement.

On February 1, 2016, the jury rendered a verdict in favor of Lambe/Sunray on several causes of action including, *inter alia*, claims for tortious interference with

contract and with prospective economic relations, abuse of process, and wrongful filing of a UCC–1 Statement, and awarded $750,000 in compensatory damages and $250,000 in punitive damages against Kahlon/Atlas. *See* 13–cv–3126, DE [133]; Compl. ¶ 73.[1]

## B. The Current Case

On or about March 9, 2016, Kahlon/Atlas commenced an action against Yitzhak in New York Supreme Court, Nassau County, alleging causes of action for legal malpractice, breach of contract, breach of fiduciary duty, breach of quasi-contract, and unjust enrichment. According to the affidavits, service on Yitzhak was effected March 28, 2016. Yitzhak's answer was filed on May 3, 2016.

On April 28, 2016, Yitzhak issued a Third Party Summons and Complaint against Lambe/Sunray. There is no indication as to when, if ever, the third-party complaint was served. It contains a single cause of action seeking an order that Yitzhak should be indemnified and defended under the terms of the settlement agreement in the federal case, and that third-party defendants should be compelled to "specifically perform" the settlement agreement.

A notice of removal was filed "jointly" by Yitzhak and Lambe/Sunray on June 22, 2016. Notice of Removal ("Notice"), DE [1]. In the Notice, they state that there is "complete diversity of citizenship between the third party plaintiff and the third party defendants" and represent that it is filed within thirty days of the receipt of the third-party complaint by Lambe/Sunray. The Notice characterizes the third party action as "seeking damages and specific performance of an indemnification in a set-tlement agreement" made before this Court. Notice, ¶ 3.

Yitzhak's answer, and the third-party summons and complaint were all filed in New York Supreme Court by Mr. Verner as attorney for the Yitzhak entities as defendants/third-party plaintiffs. All filings in this Court on behalf of both Yitzhak and Lambe/Sunray have been made by Mr. Verner.

## II. MOTION TO REMAND

■■■ Removability of civil actions brought in state courts is governed by 28 U.S.C. § 1441, "which permits a case to be removed to federal court only if it 'originally could have been filed in federal court.'" *Weinrauch v. N.Y. Life Ins. Co.,* No. 12 Civ. 5010, 2013 WL 165018, at *3 (S.D.N.Y. Jan. 15, 2013) (quoting *Vera v. Saks Co.,* 335 F.3d 109, 113 (2d Cir. 2003)). In considering a motion to remand, the removal statutes are strictly construed and any doubts are resolved in favor of remand. *See, e.g., Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir. 1994); *Atanasio v. O'Neill,* 235 F.Supp.3d 422, 424 (E.D.N.Y. 2017). Moreover, the "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272,* 642 F.3d 321, 327 (2d Cir. 2011).

The removal statute is subject to procedural requirements. Under the statute, the notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been

---

1. Kahlon/Atlas subsequently sued Yitzhak's insurance carrier for indemnification and defense costs. *See* 16–cv–2239 *Kahlon v. CNA* *Fin. Corp.* That case was removed by defendant to this Court and was dismissed. *See* 2017 WL 2633517.

filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1).

The Notice purports to be filed "jointly" by Yitzhak and Lambe/Sunray. It is clear, however, that there is no basis for removal of the primary action between Kahlon/Atlas and Yitzhak. That complaint alleges only state law causes of action, and as all parties are New York residents, there is no diversity of citizenship. Thus, the only arguable basis for removal is the third-party action between Yitzhak and Lambe/Sunray.

## A. Timeliness

■ Plaintiffs argue that any notice of removal was untimely.[2] The third-party summons and complaint are dated April 28, 2016, and according to plaintiffs, the complaint was filed on May 4, 2016. *See* Mem. of Law in Support at 7, DE [13]. The Notice states that the removal was filed within 30 days "after receipt by petitioners [Lambe/Sunray] of the summons and complaint commanding them to appear and file a written answer to the [Yitzhak] complaint." Notice, ¶ 8. There is no indication on the record as to when Lambe/Sunray were served with, or received, the third-party complaint. In addition, despite having the burden of persuasion, Yitzhak and Lambe/Sunray do not address the timing of the removal beyond a heading in their brief that begins "The Removal Was Timely." No further argument or proof is provided to support the heading language. Significantly, Yitzhak has neither filed below nor otherwise provided affidavits of service regarding when the third-party complaint was served.

2. Nothwithstanding the lack of subject matter jurisdiction over the primary action between Kahlon/Atlas and Yitzak, any attempt at removal by Yitzhak is clearly time-barred. The

Under the unique circumstances of this case, however, knowledge of the actual date of service is not essential to a finding of untimeliness. Section 1446 provides that the thirty day period for removal begins to run upon receipt of the initial pleading, "through service *or otherwise*." 28 U.S.C. § 1446(b) (emphasis added). In this case, both sides of the third-party action are represented by the same counsel, Mr. Verner. Thus, when Mr. Verner served the notice of third-party summons and complaint on plaintiffs on April 28, 2016, he clearly had notice and possession of the initial pleading on behalf of his third-party defendant clients that same date. Even giving the removing parties the benefit of the doubt and using the later filing date of May 4, 2016 as a starting point, removal was untimely as the Notice was not filed until June 22, 2016, forty-nine days later.

## B. Who May Remove

■ Even if removal were timely, it is still improper. As mentioned above, Kahlon/Atlas's complaint against Yitzhak contains only state law causes of action and cannot alone be the basis for federal jurisdiction. Thus the question is whether a third-party defendant may, under Section 1441, properly remove the case despite the plain language permitting removal only "by the defendant or the defendants." 28 U.S.C. § 1441(a). Although this question has not been answered directly by the Second Circuit, "courts in the Southern and Eastern Districts of New York 'consistently adhere to the majority position that third-party defendants have no right to remove claims...'" *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078, 2014 WL 123488, at *16 (E.D.N.Y. Jan. 10, 2014). In addition, the Yitzhak defendants were served on March 28, 2016, and the notice of removal was not filed until June 22, 2016, well past the 30–day limit.

"clear majority of federal courts has held that third-party defendants are not 'defendants' within the meaning of 28 U.S.C. § 1441(a) and therefore may not remove an action to federal court." *Id.* (citing cases).

The removing parties concede that the majority of cases in this District have found that third-party defendants are not 'defendants' within the meaning of the removal statute and thus cannot remove a case to federal court. Mem. In Opp. at 9, DE [14]. Instead, they ask this Court to adopt the so-called "minority view" that a third-party defendant be permitted to remove a case where the third-party claims have subject matter jurisdiction that is " 'separate and independent' from the primary action, a statutory reference 'not to the variety of legal theories advanced but to the underlying occurrence or occurrences giving rise to the litigation.'" *St. John's Univ. v. Certain Underwriters at Lloyd's,* 760 F.Supp.2d 381, 383 (S.D.N.Y. 2011) (quoting *Gardner & Florence Call Cowles Found. v. Empire Inc.,* 754 F.2d 478, 481 (2d Cir. 1985)).

The 'minority view' was premised upon specific language contained in a prior version of § 1441(c) that allowed for removal of "a separate and independent claim or cause of action" joined with non-removable claims. That section was amended in 2011 to remove this language, thus eliminating the legal underpinnings of the minority view. In addition, that amendment did not add any reference to third-party defendants, and "[a]s several courts have noted, had Congress intended to permit removal by third-party defendant, it could have amended § 1441(a) to clarify the definition of 'the defendant or the defendants,' or added additional language to § 1441(c) specifying that removal under that subsection is available to parties other than original defendants. It did not." *Art Crating,*

2014 WL 123488, at *17 (internal quotation and citations omitted). None of the cases cited by the removing parties were decided subsequent to this change in the statute. The Court concludes that the arguments and facts presented provide no reason to depart from the majority view and a plain reading of Section 1441 that only a defendant or defendants may remove.

## III. MOTION FOR ATTORNEYS' FEES

### A. Objective Reasonableness of Removal

Having determined that remand is appropriate, the Court considers whether the remand order should "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Fees may be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). "Objective reasonableness is evaluated based on the circumstances as of the time that the case was removed." *Williams v. Int'l Gun–A–Rama,* 416 Fed.Appx. 97, 99 (2d Cir. 2011). An award of fees under § 1447 does not require a finding of bad faith on the part of the removing party. *See Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 923–24 (2d Cir. 1992) (noting that the statute "makes no reference at all to the state of mind or intent of the party removing the action, instead focusing strictly on the mere absence of subject matter jurisdiction.").

The Court's basis for granting remand is in part procedural. "The question of whether the removing defendants were objectively reasonable to remove is an independent question from whether the removal itself was procedurally proper." *Williams,* 416 Fed.Appx. at 101 n.3. Thus

the Court looks to whether the removing parties had an objectively reasonable basis to believe that this Court had jurisdiction over the subject matter of the case.

 Plaintiffs' complaint is based solely on state law and cannot form the basis for removal. The removing parties do not suggest otherwise; instead, they argue that the claims in the third-party complaint allows removal. Standing alone, the third-party complaint asserts a diversity claim for breach of contract.[3] The issue, however, is whether the existence of this claim provided the removing parties with an objectively reasonable basis to believe that removal of the entire action was appropriate. The removing parties argue that application of the "collision of interests" doctrine requires that they be deemed a single party for purposes of diversity jurisdiction.

 Diversity jurisdiction is not determined by the parties' determination of who are plaintiffs or defendants, but rather only exists where there is an "actual, substantial controversy between citizens of different states." *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (internal citations omitted). The court may re-align parties to reflect the actual interests of the parties, and the Second Circuit has adopted a collision of interests test to consider "the multiple interests and issues involved in the litigation" and determine whether re-alignment is necessary. *Mary-*

*land Cas. Co. v. W.R. Grace &·Co.*, 23 F.3d 617, 622 (2d Cir. 1993).

The removing parties argue that application of the collision of interests leads to the conclusion that Yitzhak and Lambe/Sunray "should be treated as one diverse litigant with the Lambe Parties' undisputed New Jersey domicile." Mem. of Law in Opp. at 12. Implicit in this argument is the idea that upon re-alignment, a court may completely disregard a party's domicile. They have provided no case law to support such a proposition. Assuming *arguendo* that the collision of interests doctrine were applicable to the current case, the result would be that the New York-based Yitzhak defendants would be united in interest with Lambe/Sunray, residents of New Jersey, against Kahlon/Atlas, residents of New York. The result is a lack of complete diversity among the parties such that this Court lacks subject matter jurisdiction.

Upon consideration of the circumstances and the legal arguments presented, the Court finds that there was no objectively reasonable basis for removal of this case. Accordingly, an award of attorneys' fees under 28 U.S.C. § 1447(c) is warranted.

## B. Calculation of a Reasonable Attorneys' Fee Award

 Plaintiffs may recover fees for a reasonable number of hours expended in making the motion to remand. *See Naxos Art, Inc. v. Zoullas*, No. 16 Civ. 7269,

---

**3.** The Court rejects the removing defendants' argument that federal question jurisdiction to enforce the settlement agreement between Yitzhak and Lambe/Sunray also exists. Such a proceeding "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). It is clearly established that a court may only exercise ancillary jurisdiction to enforce a set-

tlement agreement if it "manifested an intent to retain jurisdiction or made the agreement part of its order of dismissal." *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 41 (2d Cir. 1996). Here, the Court did neither. Although the Court permitted the parties, at their request, to put the settlement on the record, it made no statement regarding the retention of jurisdiction. The stipulation of discontinuance So Ordered by this Court is also silent on this point. *See* 13–cv–3126, DE [136].

2017 WL 2894142, at *2 (S.D.N.Y. July 7, 2017). In the Second Circuit, "the lodestar–the product of a reasonable hourly rate and the reasonable number of hours required by the case–creates a 'presumptively reasonable fee.'" *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "While a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely." *Millea*, 658 F.3d at 169. In addition, this Circuit adheres to the "forum rule," generally requiring the "use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted)).

 The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). A fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160–1161 (2d Cir. 1994). In determining whether a reasonable number of attorney hours were expended, the court should "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case" and "[i]f the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation of the lodestar." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (internal quotations and citations omitted).

Plaintiffs seek fees in the total amount of $18,465.00 and have submitted time records supporting that request. Yitzhak and Lambe/Sunray dispute the amount sought as unreasonable and request a hearing. As the parties have provided the necessary materials and arguments, a hearing is unnecessary.

### 1. Hourly Rate

 A reasonable hourly rate must be considered within the context of the relevant legal "community;" specifically, "the district where the district court sits." *Arbor Hill*, 522 F.3d at 190; *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (rates should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"). In this district, courts have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates. *See, e.g., Friedman v. Self Help Cmty. Servs., Inc.*, No. 11-CV-3210, 2017 WL 663539, at *2 (E.D.N.Y. Feb. 17, 2017) (internal quotation and citation omitted).

Plaintiffs seek to recover attorneys' fees for two professionals—attorneys Jennifer J. Bock and Keri A. Joeckel. Ms. Bock avers that she is a senior associate admitted in 1999, but provides no further information regarding her credentials or experience. Affidavit of Jennifer J. Bock ("Bock Aff."), ¶ 1, DE [12–11]. Ms. Joeckel states that she is an associate admitted to practice law since 2012, but also fails to provide any details on her qualifications. Affidavit of Keri A. Joeckel ("Joeckel Aff."), ¶ 1, DE [12–10]. Both attorneys state the firm charged an "agreed upon rate" of $300 per

hour for their time. Bock Aff, ¶ 6; Joeckel Aff. ¶ 7. The Court finds that the $300 hourly rate sought by Bock, which falls well within the range for senior associates, is reasonable given her advanced level of experience. Ms. Joeckel's statements, however, are insufficient to support an award at the requested rate. *See, e.g., Fuchs v. Tara Gen. Contracting, Inc.*, No. 06-CV-1282, 2009 WL 3756655, at *2 (E.D.N.Y. Nov. 3, 2009) ("The determination of what constitutes a reasonable hourly rate also requires the submission of information concerning the credentials or experience of counsel applying for fees. Where such information is lacking, the court may reduce the award of attorney's fees accordingly" (internal quotation and citations omitted)). Based on Ms. Joeckel's experience and the work performed, the Court finds an hourly rate of $200 to be reasonable.

### 2. Work Performed

Plaintiffs have provided contemporaneous time records showing the work performed and time spent by each attorney. They seek reimbursement for 14.60 hours expended by Ms. Bock, and 46.95 hours spent by Ms. Joeckel. The removing parties have raised several issues with amounts billed. The Court has thoroughly reviewed the time records and has considered the parties' concerns in making the following determinations.

The attorneys spent 49.40 total hours researching, writing, and editing the motion for remand—5.75 hours for Ms. Bock and 43.65 hours for Ms. Joeckel. The Court finds this amount of time to be unnecessarily high and, in its discretion, reduces these amounts by one-third. Both attorneys billed 2.5 hours for an appearance before the undersigned on July 1, 2016. That conference, which lasted approximately 20 minutes, also addressed a second case. Acknowledging that there were likely other activities undertaken by counsel that did not involve the Court, each attorney may bill 40 minutes for the appearance. As plaintiffs have not indicated what portion of the entry represented travel time, no additional award for that time entry will be made. Both attorneys bill minor amounts of time for other tasks which the Court awards in full. The following chart summarizes the ruling of the Court:

| Biller | Task | Time Sought | Time Awarded | Hourly Rate | Award |
|---|---|---|---|---|---|
| Ms. Bock | Motion prep | 5.75 | 3.51 | $300 | $ 1,053.00 |
| Ms. Bock | Ct appearance | 2.50 | .66 | $300 | $ 198.00 |
| Ms. Bock | Other charges | 6.35 | 6.35 | $300 | $ 1,905.00 |
| Ms. Joeckel | Motion prep | 43.65 | 29.10 | $200 | $ 5,820.00 |
| Ms. Joeckel | Ct appearance | 2.50 | .66 | $200 | $ 132.00 |
| Ms. Joeckel | Other charges | .8 | .8 | $200 | $ 160.00 |
| | | | | TOTAL | $ 9,268.00 |

As Yitzhak and Lambe/Sunray purported to file the Notice of Removal jointly, the attorneys' fee award is imposed jointly and severally against these parties.

### IV. CONCLUSION

Plaintiffs' motion to remand is granted, and the Clerk of the Court is directed to remand this case to the New York Supreme Court, Nassau County. The Court retains jurisdiction over plaintiffs' request for attorneys' fees and grants that motion. The Clerk of the Court is directed to enter judgment for plaintiffs and against defendants/third-party plaintiffs and third-party defendants, jointly and severally, in the amount of $9,268.00.

SO ORDERED.